**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Raymond Martinez, Jr., Appellant.

Appellate Case No. 2023-001201

———————

Appeal From Greenville County
Perry H. Gravely, Circuit Court Judge

———————

Unpublished Opinion No. 2026-UP-246
Submitted April 1, 2026 – Filed May 20, 2026

———————

**AFFIRMED**

———————

Senior Appellate Defender Kathrine Haggard Hudgins, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General W. Jeffrey Young, Deputy Attorney General Donald J. Zelenka, Senior Assistant Deputy Attorney General Melody Jane Brown, all of Columbia; Solicitor Cynthia Smith Crick, of Greenville, all for Respondent.

**PER CURIAM:** Raymond Martinez, Jr. appeals his convictions and sentences for murder, armed robbery, first-degree burglary, criminal conspiracy, possession of a weapon during the commission of a violent crime, and petit larceny. On appeal, he argues the trial court erred by refusing to give his requested jury instruction regarding accomplice testimony. We affirm.

In December 2017, Cedric McKinney lived with his friend, Jermaine Bruster, at an apartment complex in Greenville. On the evening of December 31, McKinney and Bruster were in the apartment getting ready to attend a New Year's Eve celebration. McKinney left Bruster in their apartment and walked across the street to the apartment where the party was being held.

After McKinney left, several other people stopped by the apartment to see Bruster. Bruster's fiancée tried to call Bruster, but he did not answer. Shortly after, McKinney walked back to his apartment and discovered Bruster lying on the floor of the living room, just inside the door, with a gunshot wound to his chest; the apartment also appeared to have been ransacked. Paramedics and law enforcement responded to the 911 call, but Bruster died at the scene.

When McKinney returned to the apartment after the shooting, he noticed that his change jar—a purple and orange snack container—holding approximately $75 to $100 was missing from his bedroom. The lid to the container was found on the floor of his bedroom. Based on this information, Investigator Chad Maltby subpoenaed records for two Coinstar machines in the vicinity of the apartment. The records showed a transaction that occurred at a nearby Ingles shortly after the incident. Maltby then collected video footage from that Ingles and identified Martinez using the Coinstar machine to cash in $71.72 worth of change. Martinez was carrying the change in a purple and orange container with no lid.

An informant at the detention center led Maltby to identify three other people who had been with Martinez on the night of the incident—Robert Belcher (Martinez's co-defendant), Kirk Porter, and Keyla "Kiki" Mansell. Mansell and Belcher's then-girlfriend were neighbors at an apartment complex on Crestwood Forest Drive (Crestwood Apartments), approximately two miles from McKinney and Bruster's apartment. Maltby obtained surveillance video from the Crestwood Apartments on the night of the incident and identified a gray Mercedes sedan belonging to Porter's girlfriend coming and going around the time the incident occurred.

Porter, who pleaded guilty to voluntary manslaughter, testified against Belcher and

Martinez at their joint trial.[1] According to him, he was with Mansell, Belcher, and Martinez on New Year's Eve when Mansell said she "knew a lick" and the person "might have some cocaine and money." The group left Mansell's apartment with Porter driving the silver Mercedes and parked at a church off of Poinsett Road, approximately a five-minute drive from Crestwood Apartments. Porter testified that Belcher and Martinez, both carrying guns, got out of the car to "go rob somebody," while he and Mansell stayed behind in the car. He explained that the person they were going to rob lived "somewhere down the road from the church," although he could not say exactly where Belcher and Martinez went when they got out of the car. Porter stated that he and Mansell sat in the car for "some time," and then he drove down the road toward McKinney and Bruster's apartment complex and picked up Belcher and Martinez. He testified Martinez was carrying a clear container of change with a purple top on it. Porter further testified that Belcher and Martinez reported that they had to wait for someone else in the apartment to leave before they could enter. He stated that they were acting normal when they got back into the car.

Porter testified that he returned to Crestwood Apartments and dropped off Mansell and Belcher. He then drove Martinez to the Ingles to use the Coinstar machine; however, Martinez told him the machine was broken and he was unable to get any money. He dropped Martinez off at a mobile home where Martinez was staying and went to meet his girlfriend at a hotel. Porter testified he learned the next day that the man inside the home they had planned to rob had died, but he did not know the man had been shot.

At the jury charge conference, Martinez requested a specific instruction on accomplice testimony, arguing it was a standard jury instruction in federal court. The requested charge was as follows:

> You have heard testimony from [Porter] who is an "accomplice" or someone who said he or she participated in the commission of this crime.
>
> The testimony of an accomplice should be received with great care and caution.
>
> You should consider whether the particular accomplice is

---

[1] The remaining charges against Porter for this incident and others were dismissed; he had not been sentenced at the time of trial.

> testifying truthfully or falsely in order to obtain a favorable recommendation by the government in the sentencing in his own case.
>
> You should not convict the defendant on the uncorroborated testimony of an accomplice, unless you believe that testimony beyond a reasonable doubt.

The State objected, arguing the instruction was an improper comment on the facts and the "spirit" of the requested charge was encompassed in the court's credibility charge. The court denied the requested charge, finding it was an improper charge on the facts and "put[] an angle from the [court]'s perspective" on what or who to believe. However, the court gave a thorough charge on credibility.

The jury convicted Martinez of all counts, and the trial court sentenced him to an aggregate sentence of forty-five years' imprisonment. This appeal followed.

We hold the trial court did not err by refusing to give the requested jury charge. *See State v. Brooks*, 428 S.C. 618, 625, 837 S.E.2d 236, 239 (Ct. App. 2019) ("An appellate court will not reverse a trial court's decision regarding jury instruction unless there is an abuse of discretion."); *State v. Simmons*, 384 S.C. 145, 178, 682 S.E.2d 19, 36 (Ct. App. 2009) ("To warrant reversal, a [trial] court's refusal to give a requested jury charge must be both erroneous and prejudicial to the defendant."). We acknowledge Martinez's argument that the court erred by denying his requested jury charge because the State's case was "purely circumstantial" and relied heavily on Porter's testimony. However, we disagree. First, we find the requested jury charge would have been an improper comment on the facts. *See State v. Stukes*, 416 S.C. 493, 499, 787 S.E.2d 480, 483 (2016) ("[I]t is not within the province of the [trial] court to express an opinion to the jury on its view of the facts."). As the trial court explained in its reasoning for denying the request, the requested charge would have improperly emphasized Porter's testimony. *See id.* ("By addressing the veracity of a victim's testimony in its instructions, the trial court emphasizes the weight of that evidence in the eyes of the jury."). Porter was the only accomplice who testified and much of his testimony was uncorroborated. Porter also had numerous charges dismissed in exchange for his testimony. Therefore, to give the requested instruction would single Porter out from the other witnesses and serve as a comment on his veracity. *See State v. Brown*, 443 S.C. 196, 199-201, 904 S.E.2d 448, 449-51 (2024) (holding that by allowing the requested inferred malice instruction, the trial court "improperly elevated and commented to the jury upon a particular fact"). We acknowledge that the requested charge is common in federal

district courts. However, the requested charge is similar to the charge requested in *Mikell*, which our supreme court found improper. *See State v. Mikell*, 257 S.C. 315, 328-29, 185 S.E.2d 814, 820 (1971) (affirming the trial court's refusal to give a requested charge that instructed, among other things, that "[t]he testimony of an accomplice or co-conspirator must be weighed with great care and be scrutinized closely, carefully[,] and cautiously" because such a charge is an improper comment on the facts).

Additionally, the credibility charge given by the trial court sufficiently covered the substance of Martinez's request. *See State v. Mattison*, 388 S.C. 469, 479, 697 S.E.2d 578, 583 (2010) ("[T]here is no error if the charge actually given sufficiently covers the substance of the request." (quoting *State v. Austin*, 299 S.C. 456, 458, 385 S.E.2d 830, 831 (1989))). The trial court gave the standard witness credibility charge, which included a statement that the credibility determination was for the jury and the jury could accept or reject different portions of a witness's testimony. Significantly, the trial court specifically stated the jury could "consider how a particular witness looked on the stand, *whether they had a particular bias,*[and] *whether they had some interest in the outcome*" in determining whether to believe that witness. Because the charge given instructed the jury that it determines who to believe and may consider if a particular witness had an interest in the outcome, we find it sufficiently covered Martinez's request. *See State v. Bamberg*, 270 S.C. 77, 82, 240 S.E.2d 639, 641 (1977) (holding that it was within a trial court's discretion to "refuse[] to instruct the jury to take into consideration the interest or bias of the witness").

Because we hold the trial court did not err by refusing to give Martinez's requested charge, we do not find it necessary to determine whether the refusal was prejudicial. *See Simmons*, 384 S.C. at 178, 682 S.E.2d at 36 ("To warrant reversal, a [trial] court's refusal to give a requested jury charge must be both erroneous *and* prejudicial to the defendant." (emphasis added)).

**AFFIRMED.**[2]

**THOMAS, MCDONALD, and TURNER, JJ., concur.**

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.