535 S.E.2d 459

The STATE, Respondent,

v.

Timothy HAMMITT, Appellant.

No. 3220.

Court of Appeals of South Carolina.

Heard Dec. 9, 1999.
Decided July 17, 2000.
Rehearing Denied Sept. 2, 2000.

James M. Griffin, of Simmons, Griffin & Lydon, of Columbia, for appellant.

Attorney General Charles M. Condon; Chief Jonathan E. Ozmint and Assistant Attorney Generals Anne Hunter Young and John P. Riordan, all of the State Grand Jury, all of Columbia, for respondent.

HOWARD, Judge:

In this State Grand Jury prosecution, Timothy Hammitt was convicted of conspiracy to traffic in 400 grams or more of cocaine in violation of S.C.Code Ann. § 44–53–370(e)(2)(e) (Supp.1999) and sentenced to twenty-five years imprisonment and a $200,000 fine. On appeal, Hammitt argues the trial court erred in denying his motion for directed verdict, denying his motion for a new trial, denying a severance, and sentencing him to an illegal, excessive sentence. We affirm.

## FACTS/PROCEDURAL BACKGROUND

The prosecution of Hammitt and twenty-five co-defendants was the culmination of a two year State Grand Jury (SGJ) investigation. The investigation began in August 1993, when

police arrested Michael Greer on a cocaine charge and executed a search warrant at his residence. Over the next two years, police followed the chain of Greer's suppliers, continuing to make purchases and turn those arrested into cooperating informants.

The sequence of events was as follows. Once Greer was arrested, he provided information that James Smith was his supplier to police. As a result of this information, undercover officers arranged four controlled cocaine buys from Smith. Once he was then arrested, Smith agreed to assist the officers. They then set up three controlled cocaine buys from James Hattaway. Hattaway, in turn, led the officers to Todd Brank, from whom they effected at least two controlled buys. Brank also cooperated, and the officers set up a five kilogram cocaine purchase with Jerome "Babe" Harris. When Harris was subsequently arrested, he agreed to cooperate. Harris had not yet paid for the drugs he attempted to sell to undercover agents, so the officers made an undercover payment of $115,000 to his supplier, O'Bryant "O.B." Harris (O.B.) for him.[1]

The officers arrested O.B. on August 31, 1996. Under the State's view of the conspiracy, O.B. was the second level supplier. His cooperation led to Jose Gustavo Castineira, his cocaine source. As a result, the officers set up a fake undercover payoff to Castineira, which led to his arrest and that of Juan Carlos Vasquez, his traveling companion.

On October 8, 1996, the SGJ indicted twenty-six defendants for conspiracy to traffic in 400 or more grams of cocaine pursuant to S.C.Code Ann. § 44–53–370(e)(2)(e) (Supp.1999). Eighteen defendants pleaded guilty; the remaining eight were tried together during a two-week period in late April—early May 1997, including Hammitt.

Hammitt became a suspect through information provided by Todd Brank and Leslie Horne. In addition to distributing cocaine, Brank raced motorcycles. Hammitt owned a motorcycle repair shop, and specialized in modifying motorcycles for racing. Brank became one of Hammitt's customers. According to Brank, he sold Hammitt 10 ounces of cocaine on one

1. Babe Harris and O.B. Harris are not related.

occasion, and one to two ounces of cocaine on four other occasions. The total amount he distributed to Hammitt was approximately one-half kilogram. Brank testified he began selling drugs to Hammitt after they developed a relationship through motorcycle racing. The cocaine dealings with Hammitt occurred from 1993 until 1994.

According to Brank, he purchased his cocaine from Miller until Miller went to prison, and then from Miller's half-brother, Babe Harris. Harris testified he and his brother purchased cocaine from the same supplier, O.B. Harris. During these purchases, Brank always paid cash, and was never fronted any cocaine. Harris testified his relationship with Brank was one of seller and buyer, Harris did not work for Brank and Brank did not work for Harris.

Another State's witness, Kenny Brooks, confirmed that Hammitt bought "anywhere from one to three ounces at a time." Brooks also stated he was with Brank several times when Hammitt "beeped" Brank, requesting cocaine. He further testified he once saw Brank "toss [Hammitt] a package" of cocaine that contained about two ounces. Brooks never saw Brank give Hammitt more than three ounces.

Horne is Hammitt's cousin. He was also arrested as a member of the conspiracy, and agreed to cooperate. At trial, Horne testified Hammitt fronted him an ounce of cocaine on two separate occasions. He also stated he sold Hammitt two ounces he had received from Brank and that Hammitt "worked for" Brank.

At the close of the State's case, Hammitt moved for a directed verdict, arguing under *State v. Gunn*, 313 S.C. 124, 437 S.E.2d 75 (1993), that proof of a buyer-seller relationship was not sufficient to establish a conspiracy. Hammitt also joined in Vasquez's motion concerning the State's proof of multiple conspiracies when only one was alleged. In his defense, Hammitt called several witnesses but did not testify himself. At the close of all the evidence, Hammitt renewed all motions, which the trial court again denied.

The jury convicted Hammitt of conspiracy to traffic in more than 400 grams of cocaine. The trial court sentenced him to twenty-five years imprisonment and a $200,000 fine. This appeal followed.

## ISSUES

I. Whether the trial court erred in denying Hammitt's motion for directed verdict because the State's evidence failed to establish that Hammitt was a member of the conspiracy alleged in the indictment?

II. Whether the trial court erred in denying Hammitt a new trial on the ground that the jury found the existence of more than one conspiracy?

III. Whether the trial court erred in denying Hammitt's motion for a severance?

IV. Whether the trial court erred in sentencing Hammitt to a 25 year sentence and fine of $200,000 because it exceeded the maximum allowable sentence for conspiracy under S.C.Code Ann. § 44–53–420 (1985)?

## LAW/ANALYSIS

## I. DIRECTED VERDICT

■ In considering a motion for directed verdict, a trial court is concerned only with the existence or non-existence of evidence, not its weight. *See State v. Kelsey,* 331 S.C. 50, 502 S.E.2d 63 (1998); *State v. Williams,* 303 S.C. 274, 400 S.E.2d 131 (1991). Therefore, in reviewing the denial of a directed verdict motion, this Court must view the evidence in the light most favorable to the State and affirm "if there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused...." *State v. Cooper,* 334 S.C. 540, 551–52, 514 S.E.2d 584, 590 (1999) (citation omitted).

The indictment alleges a single conspiracy among at least twenty-six individuals to traffic in more than 400 grams of cocaine in Greenville and Spartanburg Counties, South Carolina, Florida, and Georgia. The object of the conspiracy alleged by the State was trafficking in cocaine in the amount of 400 grams or more of cocaine. We conclude the evidence taken in a light most favorable to the State establishes that Hammitt participated in the conspiracy charged in the indictment.

▮▮▮ A conspiracy is "a combination or agreement between two or more persons for the purpose of accomplishing a criminal or unlawful object. . . ." *State v. Gunn*, 313 S.C. 124, 133–34, 437 S.E.2d 75, 80 (1993), *cert. denied*, 510 U.S. 1115, 114 S.Ct. 1063, 127 L.Ed.2d 383 (citing *State v. Ameker*, 73 S.C. 330, 53 S.E. 484 (1906)); *see also* S.C.Code Ann. § 16–17–410 (Supp.1999); *State v. Wilson*, 315 S.C. 289, 433 S.E.2d 864 (1993). The gravamen of conspiracy is the *agreement* or *mutual understanding*. *Gunn*, 313 S.C. at 134. 437 S.E.2d at 80; *Wilson*, 315 S.C. at 294, 433 S.E.2d at 868 (emphasis added). Although the gravamen of the offense of conspiracy is the agreement, it is the individual participation of the actor by agreeing which subjects him to criminal liability as a co-conspirator. *Gunn*, 313 S.C. at 134, 437 S.E.2d at 81 ("[G]uilt . . . remains individual and personal . . . and is not a matter of mass application.") (citation omitted). In analyzing the degree of connection necessary for conviction, our supreme court stated:

> What is required is a *shared,* single criminal objective, not just similar or parallel objectives between similarly situated people. . . . It is not enough that a group of people separately intend to distribute drugs in a single area, nor enough that their activities occasionally or sporadically place them in contact with each other. People in the same industry in the same locale (even competitors) can occasionally be expected to interact with each other without thereby becoming co-conspirators. What is needed is proof they intended to act *together* for their *shared mutual benefit* within the scope of the conspiracy charged.

*Gunn*, 313 S.C. at 134, 437 S.E.2d at 80–81 (citation omitted).

▮▮▮ Our review of the sufficiency of the evidence must be viewed in the light most favorable to the State. *State v. Sullivan*, 277 S.C. 35, 282 S.E.2d 838 (1981). However, we must exercise caution to ensure proof is not obtained "by piling inference upon inference." *Gunn*, 313 S.C. at 134, 437 S.E.2d at 81 (citation omitted). Proof of a buyer-seller relationship alone is inadequate to connect the buyer to a larger conspiracy, as is nominal association with members of the conspiracy. This is so because "guilt . . . remains individual and personal . . . and is not a matter of mass application." *Id.* (citation omitted).

We conclude the evidence, taken in a light most favorable to the State, connected Hammitt to the charged conspiracy. The indictment alleged the conspiracy occurred from 1990 until 1996. Brank's testimony indicates Hammitt was involved from 1993 until 1994, when their relationship ended. Hammitt's participation falls within the dates alleged in the indictment. The State presented evidence of multiple transactions between Brank and Hammitt and between Hammitt and Horne. Both Brank and Horne were admitted members of the conspiracy.

Brank testified that he "fronted" Hammitt the cocaine, meaning that Hammitt paid Brank for the cocaine after he re-distributed it, thereby creating the fund with which to pay for it. According to Horne, Hammitt also "fronted" cocaine to him. This evidence tends to establish a conspiracy because it "suggests that the seller has an interest in the success of the buyer's re-selling activities, and because it indicates cooperation and trust rather than an arm's length retail-type sale." *United States v. Ferguson*, 35 F.3d 327, 331 (7th Cir.1994), *cert. denied*, 514 U.S. 1100, 115 S.Ct. 1832, 131 L.Ed.2d 752 (1995); *see also United States v. Dortch*, 5 F.3d 1056 (7th Cir.1993), *cert. denied*, 510 U.S. 1121, 114 S.Ct. 1077, 127 L.Ed.2d 394 (1994); *United States v. Cabello*, 16 F.3d 179 (7th Cir.1994); *United States v. Thomas*, 12 F.3d 1350 (5th Cir. 1994), *cert. denied*, 511 U.S. 1095, 114 S.Ct. 1861, 128 L.Ed.2d 483 (1994); *State v. Alcorn*, 741 S.W.2d 135 (Tenn.Crim.App. 1987); *State v. Cavallari*, 214 Wis.2d 42, 571 N.W.2d 176 (Ct.App.1997), *review denied*, 215 Wis.2d 425, 576 N.W.2d 281 (1997). The cocaine fronted in these transactions was derived from sales leading up the distribution chain within the conspiracy. The amounts "fronted" to Hammitt were further broken down into smaller quantities by him, and then re-distributed by him. Under the evidence, different levels of distributor, including Hammitt, reaped a profit by re-distributing the cocaine in smaller quantities. In this regard, Horne testified that Hammitt showed him how to cut the mixture of cocaine, in order to make a larger quantity of cocaine mixture and derive a bigger profit.

Also, according to Brank, on one occasion Hammitt purchased ten ounces of cocaine (280 grams) from him, indicating Hammitt had knowledge of the scope of the conspiracy. *See*

*State v. Barroso,* 320 S.C. 1, 462 S.E.2d 862 (Ct.App.1995), *reversed on other grounds,* 328 S.C. 268, 493 S.E.2d 854 (1997) (fact that defendant purchased in excess of 400 grams in a short period of time evinced his knowledge of the scope of the conspiracy).

■ The indictment alleged a single conspiracy to traffic in more than 400 grams of cocaine. To sustain convictions under the indictment, the State had to prove the defendants "intended to act *together* for their *shared mutual benefit* within the scope of the conspiracy charged." *Gunn,* 313 S.C. at 134, 437 S.E.2d at 80–81 (citation omitted). "The government need not show direct contact or explicit agreement between the defendants. It is sufficient to show that each defendant knew or had reason to know of the scope of the conspiracy and that each defendant had reason to believe his own benefits were dependent upon the success of the entire venture." *State v. Barroso,* 320 S.C. at 8–9, 462 S.E.2d at 868 (citing *United States v. Kenny,* 645 F.2d 1323 (9th Cir.1981), *cert. denied,* 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981)). We conclude the above evidence, taken in a light most favorable to the State, established Hammitt's participation in the conspiracy.

## II. NEW TRIAL

■ Hammitt next argues the trial court erred in denying his motion for a new trial because (1) the jury found the existence of more than one conspiracy when it found Fields and Gosnell guilty of trafficking in lesser amounts of cocaine; (2) by charging lesser amounts as to Fields and Gosnell the judge indirectly commented on the evidence against Hammitt; and (3) the judge's charge on lesser amounts as to Fields and Gosnell created an erroneous verdict option. Hammitt cites no law in support of these arguments.

As we have concluded in our analysis of Hammitt's motion for directed verdict, the State presented sufficient evidence of Hammitt's involvement in the indicted conspiracy to send the case to the jury. We have ruled in the case of *State v. Gosnell,* 341 S.C. 627, 535 S.E.2d 453 (Ct.App.2000), that the trial court erred in charging the jury to consider conspiracy to traffic in cocaine in lesser amounts as lesser included offenses against Gosnell. The transcript reveals that the trial judge

also charged lesser amounts in the case against Fields, although that issue has not come before us. However, the judge correctly charged the law in relation to Hammitt, because the trial judge gave Hammitt the option of choosing the lesser charges, which he refused. Furthermore, the jury was instructed to treat each defendant separately. Under these circumstances, we see no prejudice to Hammitt by the charges pertaining to Gosnell and Fields.

■ To warrant reversal, it is not sufficient to show error. A defendant must also show prejudice flowing from the error. *State v. Hoffman*, 257 S.C. 461, 186 S.E.2d 421 (1972). As prejudice, Hammitt argues that charging lesser degrees of trafficking in relation to co-defendants was tantamount to a charge on the facts, indirectly indicating to the jury that the judge perceived the evidence as to Hammitt to more directly establish his participation in the conspiracy.

Our supreme court considered the effect of inconsistent jury charges in the setting of a joint trial in *State v. Roof*, 298 S.C. 351, 380 S.E.2d 828 (1989). In that case, each of two co-defendants being jointly tried for murder had given pre-trial statements admitting to disposing of the deceased's body, but denying any involvement in the killing of deceased. Their individual statements inculpated themselves for accessory after the fact of murder, although the evidence established that only the two co-defendants were with the deceased at the time he was murdered. Circumstantially, at least one of the two was responsible for causing the fatal wound.

One co-defendant testified consistent with his statement at trial, and the trial judge charged the jury as to him that they could consider accessory after the fact as a lesser included offense. However, the trial judge refused to charge accessory after the fact for the non-testifying co-defendant. Our supreme court reversed, concluding that giving the instruction as to the one testifying co-defendant was tantamount to a charge on the ultimate factual issue in the case, that of the credibility of the two defendants.

However, unlike *Roof*, in this case there were multiple defendants in the conspiracy. Hammitt was not alleged to be directly connected with either Gosnell or Fields. Unlike the discreet crime charged in *Roof*, Hammitt's guilt for the

charged conspiracy was not interdependant upon the guilt or innocence of Gosnell or Fields. Consequently, we fail to see how the erroneous charge could have been considered a charge on any fact impacting on Hammitt's guilt. Accordingly, we find Hammitt's argument to be without merit.

### III. SEVERANCE

Hammitt's argument as to severance is identical to that raised and ruled upon by this Court in *State v. Castineira*, 341 S.C. 619, 535 S.E.2d 449 (Ct.App.2000). For the reasons set forth in that opinion, we find this argument to be without merit.

### IV. SENTENCING

Hammitt's final issue is identical to that raised and ruled upon by this court in *State v. Castineira*, 341 S.C. 619, 535 S.E.2d 449 (Ct.App.2000). For the reasons set forth in that opinion, we find this argument to be without merit.

### CONCLUSION

Accordingly, Hammitt's conviction and sentence are **AFFIRMED.**

CURETON and HUFF, JJ., concur.