535 S.E.2d 652

**The STATE, Respondent,**

v.

**Johnny Harold HARRIS, a/k/a Johnny Harold Miller, Appellant.**

**No. 3218.**

Court of Appeals of South Carolina.

Heard Dec. 9, 1999.

Decided July 17, 2000.

Rehearing Denied Sept. 30, 2000.

---

192

194

Jack B. Swerling, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Jonathan E. Ozmint and Assistant Attorney Generals Anne Hunter Young and John P. Riordan, all of State Grand Jury, for respondent.

HOWARD, Judge:

In this State Grand Jury prosecution, Johnny Harold Harris, a/k/a/ Johnny Harold Miller (Miller) appeals his conviction and sentence for conspiracy to traffic in 400 or more grams of cocaine in violation of S.C.Code Ann. § 44–53–370(e)(2)(e) (Supp.1999). On appeal, Miller asserts his prosecution for conspiracy violates S.C.Code Ann. § 44–53–410 (1985), which bars prosecution for the same act if it has previously led to conviction or acquittal under federal law or the law of another state. Similarly, Miller argues his conviction violates the Double Jeopardy Clause.[1] Miller also contends the trial court erred in denying a severance, denying his motion for a directed verdict, and sentencing him to an illegal, excessive sentence. We affirm.

## FACTS/PROCEDURAL HISTORY

On October 8, 1996, Miller and twenty-five co-defendants were indicted by the State Grand Jury (SGJ) for conspiring to traffic in at least 400 grams of cocaine between 1990 and 1996 following an investigation spanning over two years. The conspiracy was headed by Jose Castineira, who supplied large quantities of cocaine to O'Bryant (O.B.) Harris. O.B., in turn, distributed smaller quantities of the same cocaine to other distributors, including Miller.

In a separate federal investigation, Miller was arrested for conspiring to possess with intent to distribute cocaine in May

---

1. U.S. Const. amend. V; S.C. Const. art. I, § 12.

1991 (the 1991 conspiracy). On May 28, 1991, Miller and one co-defendant were indicted by the Federal Grand Jury for the District of South Carolina for conspiring with persons both "known and unknown" to distribute approximately two kilograms of cocaine between the dates of "at least" May 7, 1991 and May 16, 1991.[2] The federal charge stemmed from a controlled purchase of two kilograms of cocaine from Miller during the federal investigation. The government also seized $187,000 in cash from Miller's home in addition to the cocaine.

Miller's source for the two kilograms of cocaine seized in the federal arrest was O.B. The $187,000 seized in the search of Miller's house following his arrest was stored for O.B., but belonged to O.B.'s supplier, Castineira. Miller provided O.B. with a copy of his federal arrest warrant so that O.B. could explain the seizure of the cocaine and the loss of the $187,000 to Castineira.

Miller pled guilty to violating 21 U.S.C. § 846, the conspiracy count of the federal indictment, on September 6, 1991. Miller remained out of jail for almost two years pending sentencing. On May 28, 1993, he was sentenced to 60 months for that offense. Miller was then incarcerated until the date of his trial in this case. According to Miller, he cooperated with federal law enforcement officials after his arrest, including naming O.B. as his supplier and Todd Brank as his distributor. O.B. and Brank were not arrested or prosecuted in connection with that investigation.

Both O.B. and Brank were arrested in the following SGJ investigation, and became cooperating witnesses for the State against Miller in his trial. O.B. testified that he continued to supply Miller with cocaine after his 1991 conviction until he

---

**2.** The indictment read as follows:

That beginning at a date unknown to the Grand Jury, but at least from on or about May 7, 1991, and continuing thereafter to on or about May 16, 1991, in the District of South Carolina, the defendants, JOHNNY HAROLD MILLER, a/k/a Johnny Harris, and JAMES ARTHUR NESBITT, knowingly and willfully did combine, conspire, confederate and agree together and have tacit understanding with various other persons both know [sic] and unknown to the Grand Jury to distribute approximately two kilograms of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(b).
All in violation of Title 21, United States Code, Section 846.

was incarcerated on the federal charge in 1993. Brank testified he continued to purchase cocaine from Miller until Miller was incarcerated in 1993, purchasing approximately 3 kilograms between 1991 and 1993.

Miller moved to dismiss the 1996 SGJ Indictment based upon S.C.Code Ann. § 44–53–410 (1985), which bars prosecution for the same act if it has previously led to conviction or acquittal under federal law or the law of another state. Concomitantly, Miller moved to dismiss the indictment on the grounds that it violated the Fifth Amendment's Double Jeopardy Clause. Miller also moved for severance in the event the court denied his motion to dismiss.

The trial judge ruled that Miller's plea of guilty to the federal indictment ended his original involvement in the conspiracy. Consequently, assuming it was the same conspiracy, his "re-entry" was a separate act for which he could be prosecuted. The trial judge also denied the motion to sever, but instructed the jury that Miller's guilty plea ended his original involvement in the conspiracy, and he could not be found guilty based upon any activity prior to May 16, 1991.

## ISSUES

**I. Whether Miller's prosecution was barred under S.C.Code Ann. § 44–53–410 (1985), which prohibits prosecution for the same act if it has previously led to conviction or acquittal under federal law or the law of another state; and whether the prosecution was barred by Double Jeopardy?**

**II. Whether the trial judge erred in denying Miller's motion for severance and for allowing evidence of prior bad acts, including Miller's own statement?**

**III. Whether the trial judge erred in denying Miller's motion for directed verdict?**

**IV. Whether the trial judge exceeded the maximum allowable sentence by sentencing Miller to 25 years in prison?**

## LAW/ANALYSIS

## I. DOUBLE JEOPARDY

■ The first two issues raised by Miller are closely inter-twined and resolved under the same factual analysis. We therefore treat them together.

Section 44–53–410 reads as follows:

If a violation of this article is a violation of a Federal law or the law of another state, the conviction or acquittal under Federal law or the law of another state for the same act is a bar to prosecution in this State.

S.C.Code Ann. § 44–53–410 (1985).

The plain wording of this section prohibits a prosecution under Article 3 of Chapter 53 in South Carolina for the same act which has been the source of a conviction or acquittal in another state or federal court. The prohibition against double jeopardy protects against prosecution for the same offense after acquittal or conviction and against multiple punishments for the same offense. *See United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). The threshold inquiry as to each in this case is whether the same act is involved in the federal conviction and the state conviction.

■ The gravamen or gist of the offense of conspiracy is the agreement. *State v. Dasher*, 278 S.C. 454, 298 S.E.2d 215 (1982). "Generally, the agreement, which is the essence of the conspiracy, is proven by various overt acts committed in furtherance of the conspiracy." *State v. Amerson*, 311 S.C. 316, 319, 428 S.E.2d 871, 873 (1993). "Therefore, a single conspiracy may be established by completely different aggregations of proof so that there appears to be several conspiracies." *Id.* (citing *United States v. Ragins*, 840 F.2d 1184 (4th Cir.1988)). A multi-pronged "totality of the circumstances" test is applied to determine whether there were two conspiracies or merely one. *Id.*

The factors considered are (1) the time periods covered by the alleged conspiracies; (2) the places where the conspiracies are alleged to have occurred; (3) the persons charged as conspirators; (4) the overt acts alleged to have been committed in furtherance of the conspiracies, or any other descriptions of the offenses charged which indicate the

nature and scope of the activities being prosecuted; and (5) the substantive statutes alleged to have been violated.

*Id.* at 319–320, 428 S.E.2d at 873.

Miller contends that prosecution for any continued participation by him in the conspiracy after his plea of guilty to the federal conspiracy indictment is prohibited under both section 44–53–410 and the Double Jeopardy Clause. We disagree. Applying the five-factor analysis, we conclude the prosecution of Miller for the 1996 conspiracy does not violate either the Double Jeopardy Clause or section 44–53–410.

Miller entered a plea of guilty to the conspiracy on September 6, 1991. He thereafter cooperated with federal investigators by naming O.B. Harris as his supplier and Todd Brank as his distributor. Although the gravamen of the offense of conspiracy is the agreement, it is the individual participation of the actor by agreeing which subjects him to criminal liability as a co-conspirator. *State v. Gunn,* 313 S.C. 124, 134, 437 S.E.2d 75, 81 (1993) ("[G]uilt . . . remains individual and personal . . . and is not a matter of mass application.") (citation omitted), *cert. denied,* 510 U.S. 1115, 114 S.Ct. 1063, 127 L.Ed.2d 383 (1994).

Our state has not decided this exact issue, but we find authority from other jurisdictions which is persuasive. In *United States v. Asher,* 96 F.3d 270 (7th Cir.1996), *cert. denied,* 519 U.S. 1100, 117 S.Ct. 786, 136 L.Ed.2d 729 (1997), the Seventh Circuit Court of Appeals held that a convicted conspirator could be prosecuted for continued participation in the same conspiracy after his original conviction and sentence for conspiracy without violating the Double Jeopardy Clause. Applying the same five-factor analysis adopted by our state in *Amerson,* the court noted that Asher's re-entry into the same conspiracy constituted a new act for which he could be prosecuted. Likewise, in *United States v. Dunn,* 775 F.2d 604 (5th Cir.1985), the Fifth Circuit grounded its decision on "basic conspiracy law," noting: "It is well settled that a person's participation in a conspiracy ends when that person is arrested for his role in the conspiracy." *Id.* at 607. Consequently, notwithstanding the defendant's uninterrupted association with a continuing criminal conspiracy, as a matter of law his arrest ended his involvement with that criminal operation. *Id.*

("[F]urther participation in an 'old' conspiracy after being charged with that crime becomes a new offense for purposes of a double jeopardy claim.") (quoting *United States v. Stricklin,* 591 F.2d 1112, 1121 n. 2 (5th Cir.1979), *cert. denied,* 444 U.S. 963, 100 S.Ct. 449, 62 L.Ed.2d 375 (1979)).

We agree with the reasoning of *Asher* and *Dunn.* Here Miller was arrested for his participation in the conspiracy. He entered a plea of guilty, and even cooperated with the prosecution by naming his co-conspirators. The trial judge correctly concluded that as a matter of law his involvement in the conspiracy ended with his arrest and conviction. His continued participation, even if temporally uninterrupted, constituted a new act for which he could be prosecuted without violating either the Double Jeopardy Clause or section 44–53–410. *See United States v. Asher,* 96 F.3d 270 (7th Cir.1996), *cert. denied,* 519 U.S. 1100, 117 S.Ct. 786, 136 L.Ed.2d 729 (1997); *United States v. Dunn,* 775 F.2d 604 (5th Cir.1985).

## II. SEVERANCE; PRIOR BAD ACTS

■ Miller next argues that the trial judge committed reversible error by refusing to sever Miller's trial. The other co-conspirators had not been prosecuted in 1991 by federal authorities, and evidence was admitted as to the conspiracy that involved Miller and which pre-dated his 1991 arrest and conviction. Miller argues that this evidence was highly prejudicial to him in view of the trial judge's ruling that Miller could only be convicted based on his activities after his May 21, 1991 arrest, and a severance was therefore required in order to provide him with a fair trial. He argues also that the evidence of a pre-May 21, 1991 conspiracy was improperly admitted because, under the unusual posture of the case, it was prior bad act evidence which was extremely prejudicial.

■ Criminal defendants who are jointly tried are not entitled to separate trials as a matter of right. *State v. Nichols,* 325 S.C. 111, 481 S.E.2d 118 (1997). "Motions for a severance and separate trial are addressed to the discretion of the trial court ... [and] [a]bsent a showing of an abuse of discretion, this Court will not disturb the trial court's ruling on appeal." *Id.* at 122, 481 S.E.2d at 124 (citation omitted).

Miller's severance argument presupposes the inadmissibility of the pre-May 21, 1991 conspiracy evidence because he could not be convicted under the trial judge's ruling for his participation in it. Nowhere does the record reflect that this evidentiary point was raised to, or ruled upon, by the trial judge. Although counsel for Miller argued that the evidence was highly prejudicial to Miller, there is no motion contained within the record to exclude the evidence on the basis that it was inadmissable "prior bad act" evidence under Rule 404(b), SCRE, or *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923).

Although Miller did not directly raise admissibility of this evidence as an issue, we must resolve this question to determine whether Miller has shown prejudice from the joint trial. As stated previously, Miller maintains that the conspiracy was ongoing, and could only be considered one criminal act for which he had already been prosecuted. We have resolved this against him in Part I of this opinion, but we have done so by recognizing as a legal proposition that Miller's plea of guilty ended his original participation in the conspiracy. Factually, however, this is peculiar to Miller, and has no particular significance in determining the beginning or the end of the conspiracy itself. Consequently, from a purely factual perspective, the activities of Miller and his co-conspirators prior to May 21, 1991 are evidence of the conspiracy the State charged and intended to prove.

Miller's act of conspiring prior to May 21, 1991 is also evidence of his role in the ongoing conspiracy which the State maintains he re-entered. The State must prove the existence of the conspiracy, as well as the actor's participation. *Gunn*, 313 S.C. at 134, 437 S.E.2d at 81.

"[W]hen a conspiracy is shown all declarations in furtherance thereof, by any of the conspirators, to advance the common cause, are evidence against all, though not made in the presence of each other." *State v. Ferguson*, 221 S.C. 300, 304, 70 S.E.2d 355, 357 (1952), *cert. denied*, 344 U.S. 830, 73 S.Ct. 35, 97 L.Ed. 646 (1952). The acts and declarations of any conspirator made during the pendency of the conspiracy, and in furtherance thereof, are deemed acts and declarations of every other conspirator. *Id.* Once the conspiracy ends, however, the acts and declarations of a co-conspirator are

inadmissible against the other conspirators. *State v. Mikell,* 257 S.C. 315, 185 S.E.2d 814 (1971).

In *United States v. Kennedy,* 32 F.3d 876 (4th Cir.1994), *cert. denied,* 513 U.S. 1128, 115 S.Ct. 939, 130 L.Ed.2d 883 (1995), the defendant asserted on appeal that evidence of prior drug activity between the defendant and his suppliers arising out of a separate investigation were part of a different conspiracy involving different people and a different time period, and not a part of the charged conspiracy. Consequently, the defendant contended the prior drug activity constituted "other crimes, wrongs or acts" as defined under Fed.R.Evid. 404(b), which was inadmissible. The Fourth Circuit Court of Appeals disagreed, holding that it is not "other crimes" evidence if it "arose out of the same . . . series of transactions as the charged offense, . . . or if it is necessary to complete the story of the crime [on] trial." *Id.* at 885 (quoting *United States v. Towne,* 870 F.2d 880, 886 (2d Cir.1989)). The court concluded the evidence constituted predicate evidence necessary to provide the context to the drug distribution scheme that took place within the charged time frame. "By providing the jury with background information on [the defendant's] activities during the preparatory stages of the conspiracy, this evidence 'served to complete the story of the crime on trial.'" *Id.* at 886 (quoting *United States v. Masters,* 622 F.2d 83, 87 (4th Cir.1980)). The evidence also showed the defendant's own distribution "subset" within the larger conspiracy, helping the jury to understand how the subset related to and became a part of the larger, charged conspiracy. For these reasons, the court held that the evidence did not constitute "other crimes" evidence under Rule 404(b), and the district court properly admitted it as proof of the existence and structure of the charged drug distribution conspiracy.

Moreover, actions of conspirators prior to a co-conspirator's involvement are admissible. *United States v. United States Gypsum Co.,* 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *United States v. Sepulveda,* 710 F.2d 188, 189 (5th Cir.1983). Further, evidence of prior acts on the part of conspirators that predate the conspiracy is admissible to show the background and development of the conspiracy, the relationship between the conspirators, and the significance of the later acts. *See United States v. Diaz,* 878 F.2d 608 (2d

Cir.1989); *United States v. Moten,* 564 F.2d 620 (2d Cir.1977); *United States v. Torres,* 519 F.2d 723 (2d Cir.1975); *United States v. Crockett,* 514 F.2d 64 (5th Cir.1975). *See also Commonwealth v. McLaughlin,* 431 Mass. 241, 726 N.E.2d 959, 965 (2000) ("Matters surrounding the history of the conspiracy, including statements of coconspirators, may be admissible even if they predate the conspiracy.") (citation omitted).

We conclude evidence of the conspiracy pre-dating Miller's re-entry into it was admissible as background, as evidence of the existence of the conspiracy itself, and to explain Miller's relation to it to the jury. It was not "other crimes" evidence violating Rule 404(b), SCRE. Consequently, the failure to sever Miller's trial did not result in prejudice from the admission of evidence against other co-conspirators which was inadmissible against Miller.

The trial judge charged the jury that they could only find Miller guilty if they concluded that he participated in the conspiracy after May 21, 1991. Furthermore, the jury did not find several co-defendants guilty of trafficking in 400 or more grams of cocaine, indicating that the jury was not confused by the multi-defendant trial or extensive testimony. Rather, the verdicts indicate the jury carefully analyzed the evidence and followed the trial judge's charge. Therefore, we see no prejudice to Miller in the refusal to grant a severance.

### III. DIRECTED VERDICT

Miller next argues the court erred by failing to grant a directed verdict. On a motion for a directed verdict in a criminal case, the trial court is concerned with the existence or non-existence of evidence, not its weight. *State v. Morgan,* 282 S.C. 409, 319 S.E.2d 335 (1984). If the State presents any evidence which reasonably tends to prove the defendant's guilt, or from which the defendant's guilt could be fairly and logically deduced, the case must go to the jury. *State v. Poindexter,* 314 S.C. 490, 431 S.E.2d 254 (1993).

Both Miller's supplier, O.B. Harris, and Miller's purchaser, Todd Brank, testified that they continued to deal in kilogram quantities of cocaine with Miller after he pled guilty in September 1991 until he was sentenced in federal court on May 28, 1993. We conclude this testimony provided ample evi-

dence of Miller's re-entry into the conspiracy and his active participation following the September 8, 1991 conviction. Consequently, the trial judge did not err in refusing to grant a directed verdict of acquittal.

## IV. SENTENCING

Miller's final issue is identical to that raised and ruled upon by this Court in *State v. Castineira,* 341 S.C. 619, 535 S.E.2d 449 (Ct.App.2000). For the reasons set forth in that opinion, we find this argument to be without merit.

## CONCLUSION

For the foregoing reasons, Miller's conviction and sentence are

**AFFIRMED.**

CURETON and HUFF, JJ., concur.