572 S.E.2d 267

**The STATE, Respondent,**

v.

**Johnny Harold HARRIS, a/k/a Johnny Harold Miller, Petitioner.**

No. 25535.

Supreme Court of South Carolina.

Heard June 11, 2002.
Decided Oct. 14, 2002.
Rehearing Denied Dec. 3, 2002.

644

Jack B. Swerling, of Columbia, for petitioner.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, State Grand Jury Chief Robert E. Bogan, and Assistant Attorney General Tracey Colton Green, all of Columbia, for respondent.

Justice WALLER:

We granted a writ of certiorari to review the Court of Appeals' opinion in *State v. Miller*, 342 S.C. 191, 535 S.E.2d 652 (Ct.App.2000).[1] We affirm in result.

## FACTS

This case arose out of a single State Grand Jury (SGJ) prosecution involving numerous co-defendants. Essentially, the state's case involved a conspiracy to traffic cocaine in the upstate between 1990–1996. Each time police made an arrest, they would seek cooperation from the arrestee and arrange controlled buys from other members of the conspiracy. The state alleged that Jose Castineira was the head supplier, who supplied large amounts of cocaine to O'Bryant (O.B.) Harris who in turn supplied to other distributors, including petitioner Miller,[2] and a distributor named Todd Brank. Brank sold to

---

1. We simultaneously granted certiorari to review the related cases of *State v. Hammitt*, 341 S.C. 638, 535 S.E.2d 459 (Ct.App.2000) and *State v. Castineira*, 341 S.C. 619, 535 S.E.2d 449 (Ct.App.2000). Our opinions in those cases are filed separately.

2. Miller's legal name is Johnny Harold Miller. His mother married Jerome Harris subsequent to his birth, which is why Miller is also known as Johnny Harris.

Timothy Hammitt. Ultimately, the SGJ indicted twenty-six defendants, eighteen of whom pled guilty; the remaining eight, including Timothy Hammitt, Jose Castineira and Miller, were tried together in April–May 1997. Miller was convicted of conspiracy to traffic in 400 grams of cocaine and sentenced to twenty-five years imprisonment.

## ISSUES

1. Was Miller properly sentenced for trafficking pursuant to S.C.Code Ann. § 44–53–370(e)(2)(e)(2002)?

2. Was Miller's conspiracy conviction prohibited by virtue of his 1991 plea to conspiracy under a federal indictment?

3. Did the court err in denying Miller's motion for a severance?

4. Did the court err in denying Miller's motion for a directed verdict?

### 1. MAXIMUM SENTENCE FOR CONSPIRACY

Pursuant to S.C.Code Ann. § 44–53–370(e)(2)(e)(2002),

(e) Any person who knowingly sells, manufactures, cultivates, delivers, purchases, or brings into this State, or who provides financial assistance or otherwise aids, abets, attempts, **or conspires to sell, manufacture, cultivate, deliver, purchase, or bring into this State,** or who is knowingly in actual or constructive possession or who knowingly attempts to become in actual or constructive possession of:

(2) ten grams or more of cocaine or any mixtures containing cocaine, as provided in Section 44–53–210(b)(4), **is guilty of a felony which is known as "trafficking in cocaine"** and, upon conviction, must be punished as follows if the quantity involved is:

(e) four hundred grams or more, a term of imprisonment of not less than twenty-five years nor more than thirty years with a mandatory minimum term of imprisonment of twenty-five years, no part of which may be suspended nor probation granted, and a fine of two hundred thousand dollars . . . .

(Emphasis supplied). The statute goes on to state that, "[n]otwithstanding Section 44–53–420, **a person convicted**

of conspiracy pursuant to this subsection must be sentenced as provided in this section with a full sentence or punishment and not one-half of the sentence or punishment prescribed for the offense." (Emphasis supplied).

■ Petitioner cites S.C.Code Ann. § 44–53–420 (2002), contending his punishment should not have exceeded one-half of that for trafficking in excess of 400 grams of cocaine (i.e., one-half of thirty years). Section 44–53–420 provides:

> Any person who attempts or conspires to commit any offense made unlawful by the provisions of this article shall, upon conviction, be fined or imprisoned in the same manner as for the offense planned or attempted; but such fine or imprisonment shall not exceed one half of the punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

The Court of Appeals held in *Castineira, supra,* that section 44–53–420 did not apply; it found the language of section 44–53–370(e), under which the defendant was indicted, incorporates conspiracy within the substantive offense. 341 S.C. at 625–26, 535 S.E.2d at 452–53. We agree. Clearly, the plain and unambiguous language of section 44–53–370(e) reflects a legislative intent that those guilty of conspiring to traffic drugs thereunder are subject to the full sentence for the offense, rather than the one-half sentence provided in section 44–53–420.

Recently, in *Harris v. State,* 349 S.C. 46, 48, 562 S.E.2d 311, 312 (2002), this Court noted that "as defined in [section 44–53–370(e)(2)], there is no distinction between conspiracy to traffick and the substantive offense of trafficking.... The legislature clearly intended that conspiracy to traffic be treated as trafficking under § 44–53–370(e)."

Petitioner asserts there is a difference between "trafficking by conspiracy" and a "conspiracy to traffic." Essentially, he claims one may be guilty of the substantive offense of "trafficking by conspiracy" only if that person conspires to sell, manufacture, deliver or bring into the state more than 10 grams of cocaine. Any other conspiracy to violate the trafficking statute, he contends, is "conspiracy to traffic" which is

exempted by section 44–53–420.[3] This contention is untenable. Contrary to petitioner's contention, the *Harris* court specifically found that the legislature intended conspiracy to traffic be treated as trafficking. Petitioner's attempt to circumvent this result with a distinction between a substantive offense of "trafficking by conspiracy" and "conspiracy to traffic" is unavailing.[4] Accordingly, Miller's twenty-five year sentence is affirmed.

## 2. MILLER'S FEDERAL CONSPIRACY ARREST

On May 16, 1991, Miller was arrested by federal authorities in conjunction with a cocaine transaction which occurred between May 7, 1991 and May 16, 1991. A three-count indictment was issued charging Miller and one James Nesbitt with conspiracy to distribute two kilos of cocaine, distribution of two kilos of cocaine, and possession with intent to distribute eight ounces of cocaine. No other conspirators were named in the federal indictment; the indictment did state, however, that Miller and Nesbitt conspired "with various other persons both known and unknown." Miller agreed to plead guilty to one count upon the government's agreement to move to dismiss the other two counts.[5] Accordingly, on September 6, 1991, Miller pled guilty to conspiracy to possess with intent to distribute cocaine. However, he remained out of jail for nearly two years (until May 1993), when he was sentenced to sixty months in prison by a federal judge.

In August 1993, the SGJ began an undercover investigation (dubbed Operation Cue Ball) by making undercover drug buys from an individual named Michael Greer. Greer gave police

---

3. In *State v. Raffaldt*, 318 S.C. 110, 117, 456 S.E.2d 390, 394 (1995), we recognized that trafficking under 44–53–370(e)(2) may be accomplished by a variety of acts, including such acts as providing financial assistance or knowingly having actual or constructive possession of cocaine.

4. Moreover, a majority of this Court rejected the analysis of Justice Finney's dissent in *State v. Wilson*, 315 S.C. 289, 296, 433 S.E.2d 864, 869 (1993), drawing a distinction between the offenses of "conspiracy to traffic" and "trafficking by conspiracy."

5. Miller was also pled guilty to conspiracy to possess marijuana with intent to distribute, and given a concurrent sixty month sentence on the same day.

information which led to the arrest of James Smith a/k/a Smitty, who in turn implicated James Hattaway, who then implicated Todd Brank, who set up controlled buys from Jerome "Babe" Harris, who is Miller's half-brother. Brank, who implicated Miller, testified that Miller had been his cocaine supplier until Miller went to prison in May 1993. Miller admitted his participation but maintained that his involvement in the conspiracy had ended with his federal arrest. Contrary to Miller's testimony, however, O.B. Harris testified he continued to supply Miller with cocaine from the time of his 1991 arrest until his 1993 incarceration, and had even had continued drug dealings with Miller while Miller was in jail. Brank testified he had purchased approximately 3 kilos of cocaine from Miller between 1991–1993.

Miller was indicted by the SGJ on October 8, 1996, for conspiring to traffic 400 grams of cocaine between 1991–1996. He moved to dismiss the SGJ indictment on the ground that there had been but one conspiracy, to which he had already pled guilty in conjunction with his 1991 federal drug arrest, such that the state prosecution was prohibited by S.C.Code Ann. § 44–53–410 (2002) and the Double Jeopardy clauses.[6] The trial court ruled Miller's involvement in the conspiracy ended on the date of his arrest on May 16, 1991, and instructed the jury that in order to convict Miller, it would have to find he conspired after that date. The Court of Appeals agreed finding, as a matter of law, that Miller's involvement in the conspiracy ended with his arrest and conviction. 342 S.C. at 199, 535 S.E.2d at 656.[7] Accordingly, it found his continued participation thereafter constituted a new act for which he could be prosecuted. We agree.

S.C.Code Ann. § 44–53–410 (2002) states, "If a violation of this article is a violation of a Federal law or the law of another state, the conviction or acquittal under Federal law or the law of another state **for the same act** is a bar to prosecution in this State." (Emphasis supplied). Accordingly, the issue

---

6. U.S. CONST. amend. V; S.C. CONST. art. I, § 12.

7. The Court of Appeals erroneously held that the trial court ruled Miller's involvement ended with his arrest **and conviction.** The trial court held only that Miller's participation terminated with his May 16, 1991 **arrest** and so instructed the jury.

before us is whether Miller's arrest effectually ended his participation in the initial conspiracy, such that his "re-entry" or continued participation thereafter constitutes a separate act, or a new "agreement" for which he was properly prosecuted.[8] Under several authorities, we find that it is.

In *United States v. Asher*, 96 F.3d 270 (7th Cir.1996), *cert. denied*, 519 U.S. 1100, 117 S.Ct. 786, 136 L.Ed.2d 729 (1997), the Seventh Circuit held a conspirator's re-entry into the same conspiracy for which he was previously convicted can lead to a second prosecution for conspiracy without violating the Double Jeopardy Clause. 96 F.3d at 273–74. Asher pled guilty to an automobile theft conspiracy. He served a term of imprisonment and upon release immediately became involved in the same conspiracy. He was again charged with conspiracy and raised a double jeopardy claim. The Seventh Circuit upheld the second prosecution finding Asher entered into a new agreement to commit a crime when he decided to rejoin the stolen vehicle ring following his release from prison. The court noted "[u]doubtedly, Congress could have chose to punish rejoining a conspiracy in addition to punishing the original conspiracy without running afoul of the Double Jeopardy Clause." *Id.* at 274.

Similarly, in *United States v. Dunn*, 775 F.2d 604 (5th Cir.1985), the defendant was separately indicted for two conspiracies to manufacture amphetamines, one conspiracy running from early 1979–April 1983 (the San Antonio indictment), and the other between July 23, 1980–November 1980, the date of Dunn's arrest (the Austin indictment). The San Antonio indictment was specifically amended to limit Dunn's participation in the conspiracy to dates after his November 1980 arrest. Dunn was convicted of the San Antonio conspiracy and maintained he was convicted twice for his uninterrupted activities in a continuing criminal conspiracy when there was no evidence of a second agreement. See *Dunn*, 775 F.2d at 606. The *Dunn* court stated, "it is well settled that a person's participation in a conspiracy ends when that person is arrested

---

**8.** Miller does not contest that he participated in a conspiracy after his arrest, specifically conceding that he "continued to actively participate from the date of his federal arrest on May 16, 1991, through the time he pled guilty to the federal charges ... on September 6, 1991, and continuing until his incarceration on May 28, 1993."

for his role in the conspiracy." *Id.* at 607, *citing United States v. Postal,* 589 F.2d 862 (5th Cir.), *cert. denied,* 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 40 (1979).

The *Dunn* court went on to note that "further [participation in an] 'old' conspiracy after being charged with that crime becomes a new offense **for purposes of a double jeopardy claim.**" *Id., citing United States v. Stricklin,* 591 F.2d 1112, 1121 n. 2 (5th Cir.), *cert. denied,* 444 U.S. 963, 100 S.Ct. 449, 62 L.Ed.2d 375 (1979) (emphasis supplied). *See also United States v. Lopez,* 153 F.3d 723 (4th Cir.), *cert' denied* 525 U.S. 975, 119 S.Ct. 431, 142 L.Ed.2d 351 (1998)(defendant indicted for a second conspiracy for his post-arrest activities while out on bond; court adopted reasoning of *Asher* and *Dunn* to find defendant's involvement in first conspiracy ended with arrest and conviction such that they could be subjected to prosecution for any further involvement in the on-going conspiracy); *United States v. Romero,* 967 F.2d 63, 68 (2d Cir.1992)(defendant not subjected to double jeopardy when tried for conspiracy to violate federal narcotics statutes and engaging in a continuing criminal enterprise, even though he had previously pled guilty to conspiracy to violate RICO in connection with drug dealing and the new charges dealt with the period after his guilty plea); *United States v. Sharpe,* 193 F.3d 852 (5th Cir.1999), *cert. denied,* 528 U.S. 1173, 120 S.Ct. 1202, 145 L.Ed.2d 1105 (2000) (person's participation in conspiracy ends when that person is arrested for his role in the conspiracy); *United States v. Goff,* 847 F.2d 149 (5th Cir.), *cert. denied,* 488 U.S. 932, 109 S.Ct. 324, 102 L.Ed.2d 341 (1988)(arrest of several members of conspiracy does not necessarily terminate conspiracy, although arrested member's participation in conspiracy ends at time of arrest); *People v. Wilson,* 454 Mich. 421, 563 N.W.2d 44 (1997) (defendants' role in conspiracy ended with their arrest notwithstanding underlying conspiracy may have been on-going).

We adopt the reasoning of the above authorities. We hold that the re-entry into a continuing conspiracy subsequent to the defendant's arrest is, for purposes of double jeopardy, the formation of a new agreement. Accordingly, we find Miller's participation, subsequent to his May 1991, arrest constituted a new offense for which he could be prosecuted. *Dunn, supra.*

## 3. SEVERANCE/PRIOR BAD ACTS

Miller next asserts the trial court erred in refusing to sever his trial from that of his codefendants; he claims prejudicial error in admission of evidence of his "prior bad acts" in the conspiracy, which occurred prior to May 16, 1991 (the date of his federal arrest). He contends this evidence was prejudicial and reversible.

■■■ Initially, as noted by the Court of Appeals, although Miller requested a severance and claimed this evidence would be prejudicial, he did not request a severance based upon the issue which he now raises, i.e., that lack of a severance would result in admission of improper prior bad act evidence under Rule 404(b), SCRE, and *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923).[9] Accordingly, this issue is not preserved. *State v. Byram*, 326 S.C. 107, 485 S.E.2d 360 (1997); *State v. Bailey*, 298 S.C. 1, 377 S.E.2d 581 (1989) (party may not argue one ground at trial and then an alternative ground on appeal). In any event, Miller has not demonstrated prejudice from the lack of a severance.

■■■ A motion for severance is addressed to the trial court and should not be disturbed unless an abuse of discretion is shown. Charges can be joined in the same indictment and tried together where they (1) arise out of a single chain of circumstances, (2) are proved by the same evidence, (3) are of the same general nature, and (4) no real right of the defendant has been prejudiced. *State v. Tucker*, 324 S.C. 155, 478 S.E.2d 260 (1996) *cert. denied* 520 U.S. 1200, 117 S.Ct. 1561, 137 L.Ed.2d 708 (1997). Recently, this Court noted that "a severance should be granted only when there is a serious risk that a joint trial would compromise a specific trial right of a co-defendant or prevent the jury from making a reliable judgment about a co-defendant's guilt.... An appellate court should not reverse a conviction achieved at a joint trial in the

---

9. Miller did object to the admissibility of his statement to police on grounds that it contained evidence of activities for which he had already been punished. Moreover, evidence of the prior conviction was admissible under Rule 609(a)(1)(evidence that accused has been convicted of a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused).

absence of a reasonable probability that the defendant would have obtained a more favorable result at a separate trial." *Hughes v. State,* 346 S.C. 554, 558–59, 552 S.E.2d 315, 317 (2001).

Here, the trial court explicitly instructed the jury that Miller could only be convicted of conspiracy if it found he conspired to traffic in cocaine after May 16, 1991. Further, Miller's defense at trial was that he had, in fact, participated in the conspiracy up until his federal arrest, but that he had ceased participating thereafter. Since Miller's sole defense was that his participation in the conspiracy ended in May 1991, introduction of his prior drug conviction was inextricably linked with his defense, such that it would necessarily have been admitted in a separate trial. *Hughes, supra.* Accordingly, Miller was not prejudiced by admission of this evidence, nor is there any reasonable probability he would have obtained a more favorable result at a separate trial.

## 4. DIRECTED VERDICT

Finally, Miller asserts he was entitled to a directed verdict as there was insufficient evidence of a separate conspiracy subsequent to his federal arrest. We disagree.

In reviewing the denial of a motion for a directed verdict, the evidence must be viewed in the light most favorable to the State. If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, an appellate court must find that the case was properly submitted to the jury. *State v. McGowan,* 347 S.C. 618, 557 S.E.2d 657 (2001).

Miller concedes the state presented evidence of his participation in the conspiracy subsequent to his federal arrest. Accordingly, given our holding in Issue 1 that his participation in the initial conspiracy ended with his federal arrest, we find the issue of his re-entry or subsequent participation in the conspiracy was properly submitted to the jury. The Court of Appeals properly upheld the denial of Miller's motion for a directed verdict.

**AFFIRMED.**

TOAL, C.J., MOORE and BURNETT, JJ., concur.
PLEICONES, J., concurring in part and dissenting in part in a separate opinion.

Justice PLEICONES:

I concur in part and dissent in part. I agree with the majority that there is no distinction for sentencing purposes between "trafficking by conspiracy" and "conspiracy to traffic." I do not agree, however, that we should adopt the Fifth Circuit's rule [1] that an arrest ends the arrestee's role in a conspiracy as a matter of law. *See, e.g. United States v. Dunn*, 775 F.2d 604 (5th Cir.1985). I would hold that petitioner may be prosecuted in state court for his role in this conspiracy only if the jury finds that he withdrew and then rejoined it. I would therefore reverse petitioner's conviction and remand for a new trial.

The gravamen of a conspiracy is the agreement. *E.g., State v. Amerson*, 311 S.C. 316, 428 S.E.2d 871 (1993). An individual who joins the conspiracy remains a party to it until he withdraws or until the conspiracy terminates. A withdrawal is effective only when it is communicated to the other members of the conspiracy. *State v. Woods*, 189 S.C. 281, 1 S.E.2d 190 (1939); *see also State v. Gunn*, 313 S.C. 124, 437 S.E.2d 75 (1993). "It is always a question for the jury to determine by the facts and circumstances in the case if a person has retired from the unlawful and illegal conspiracy. . . . ." *State v. Rook*, 174 S.C. 225, 235, 177 S.E. 143, 147 (1934).

---

1. The majority cites several cases from other jurisdictions that it contends adopt this same rule. In my opinion, however, none of these other cases stand squarely for this proposition. For example, the unpublished decision of the Fourth Circuit in *United States v. Lopez*, 1998 WL 476788 (4th Cir.1998), holds that "The Defendants' involvement in the conspiracy . . . ended with their arrest **and conviction**." *Id.* (emphasis supplied). While the Michigan decision does rely on Fifth Circuit precedent in "noting" the defendants' part in the conspiracy ended when they were arrested, the issue in that case was whether the government could invoke an exception to the Double Jeopardy bar which allows the state to prosecute a greater crime following a conviction for a lesser included offense where the state learned of additional facts after the first conviction. *People v. Wilson*, 454 Mich. 421, 563 N.W.2d 44 (1997) (holding government had not met its burden allowing it to invoke the *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) exception).

In my view, petitioner's state prosecution for his role in the drug conspiracy is barred by S.C.Code Ann. § 44–53–410 (Supp.2000) [2] unless the state can prove, beyond a reasonable doubt, that petitioner withdrew and then reentered (by making a new agreement) the continuing conspiracy. This evidentiary requirement is consistent with that imposed in successive conspiracy prosecutions by both the Second and the Seventh Circuits. *See, e.g. United States v. Romero*, 967 F.2d 63, 67 (2d Cir.1992)(Double Jeopardy no bar to a second conspiracy prosecution if the government can "demonstrate that **every element** of [the second] conspiracy offense happened after the date of the plea [to the first conspiracy indictment]")(emphasis supplied); *United States v. Asher*, 96 F.3d 270, 272 (7th Cir.1996) (Double Jeopardy no bar to second conspiracy prosecution if government can show defendant withdrew after his first arrest, conviction, and incarceration, and "that after his release from prison, [he] reentered the conspiratorial agreement thereby committing a new offense").

There is some appeal to the hard and fast rule adopted by the majority that an arrest terminates participation in a conspiracy as a matter of law. As explained above, however, such a rule does not comport with our conspiracy jurisprudence. I would therefore reverse the decision of the Court of Appeals, and remand this matter for a new trial.

---

**2.** Petitioner has no valid Double Jeopardy claim since he is being prosecuted by the state following a federal conviction. *Abbate v. United States*, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959).