THIS OPINION HAS NO PRECEDENTIAL VALUE

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 

PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 The State, Respondent,
 v.
 Raphael Hernandez, Honorio Guerrero, and Alfredo Avila-Arjona, Appellants.
 
 
 

Appeal From Edgefield County
 William P. Keesley, Circuit Court Judge
Unpublished Opinion No. 2007-UP-183
Submitted April 2, 2007  Filed April 18, 2007

AFFIRMED

 
 
 Chief Attorney Joseph L. Savitz, III, South Carolina Commission on Indigent Defense, of Columbia, for Appellants. 
 
 Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Sabrina C. Todd, all of Columbia; and Solicitor Donald V. Myers, of Lexington, for Respondent.
 
 

PER CURIAM:  Raphael Hernandez, Honorio Guerrero, and Alfredo Avila-Arjona (collectively Appellants) appeal the trial courts denial of their motions for directed verdicts.  Appellants claim the State failed to produce any evidence showing Appellants knowingly attempted to possess the marijuana at issue.  Further, Appellants contend the State showed only that they were present at the scene, and their presence without the requisite knowledge warrants a reversal of the trial courts ruling.  We affirm. 
 
FACTS
On May 14, 2002, United States customs agents discovered marijuana concealed inside furniture on a semi-trailer as it crossed into the United States from Mexico.  Once the drugs were detected at the border, United States Customs and Border Protection contacted a customs agent in Greenville, South Carolina to arrange an undercover transfer of the drugs.  The furniture in which the drugs were hidden was scheduled to be delivered to Fredy DeLeon, owner of Tienda DeLeon, in Trenton, South Carolina.  Four days later, local, state, and federal authorities participated in a controlled delivery of approximately nine-hundred pounds of marijuana. 
 
Once the delivery arrived at Tienda DeLeon, an undercover customs agent and two other men from the store unloaded a portion of the semi-trailers cargo.  However, the majority of the cargo remained inside the semi-trailer.  DeLeon instructed the driver and the undercover agent to transport the remaining cargo to Billys Super Store and to wait there until some gentlemen arrived.  When the driver and the customs agent arrived at Billys Super Store, the undercover agent backed the semi-trailer up to a loading bay.  No one was present when the semi-trailer arrived.
 
After approximately twenty-five or thirty minutes, a green Thunderbird, which was previously parked at Tienda DeLeon, drove past the semi-trailer.  The Thunderbird reappeared a few minutes later and pulled into the parking lot, immediately followed by a moving truck.  Appellant Guerrero drove the moving truck, and Appellants Hernandez and Avila-Arjona were passengers.  The moving truck stopped perpendicular to the front of the semi-trailer, and the Thunderbird pulled along the drivers side of the semi-trailer, making it impossible for the semi-trailer to leave.  The Thunderbirds passenger approached the drivers side and attempted to get inside the semi-trailer.  However, the undercover agent refused to allow him inside the semi-trailer. 
 
Meanwhile, the Thunderbirds driver proceeded to talk with Appellants who were inside the moving truck.  According to the customs agent, at least one of the two men in the Thunderbird was initially present at Tienda DeLeon.  The Thunderbirds passenger then instructed the driver and the customs agent to follow the moving truck and the Thunderbird.  The three vehicles drove for an extended period of time on unpaved rural roads, and eventually, the moving truck and the semi-trailer became stuck in mud.  The authorities then decided to end the undercover operation. 
 
While the Thunderbird managed to escape, Appellants and DeLeon were arrested at the scene.  A search of the semi-trailer revealed substantial amounts of marijuana.  However, the cargo portion of the moving truck was completely empty.  The authorities discovered rental paperwork inside the moving truck that showed Appellant Guerrero had rented the moving truck on May 17, 2002.
On March 22, 2004, an Edgefield grand jury indicted Appellants and DeLeon for trafficking approximately nine-hundred pounds of marijuana.  A trial was held June 28 through July 6, 2004.  At the conclusion of the States case, counsel for Appellants moved for directed verdicts, claiming the State had proved no more than Appellants mere presence at the scene and had failed to prove knowledge, a required element to convict a person for trafficking in marijuana.  
The trial court denied Appellants motions for directed verdicts.  Appellants later renewed these motions at the conclusion of DeLeons case, which the trial court again denied.  A jury found Appellants guilty of trafficking in marijuana, and the trial court sentenced Appellants to twenty-five years imprisonment.  This appeal followed.  
 
STANDARD OF REVIEW
On appeal from the denial of a directed verdict in a criminal case, this Court must view the evidence in the light most favorable to the State.  State v. Curtis, 356 S.C. 622, 633, 591 S.E.2d 600, 605 (2004).  When ruling on a motion for a directed verdict, the trial court is concerned with the existence or nonexistence of evidence, not its weight.  State v. Cherry, 361 S.C. 588, 593, 606 S.E.2d 475, 477-78 (2004).
If there is any direct evidence or substantial circumstantial evidence reasonably tending to prove the guilt of the accused, this Court must find the case was properly submitted to the jury.  State v. Harris, 351 S.C. 643, 653, 572 S.E.2d 267, 273 (2002).  On the other hand, a defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged.  State v. McKnight, 352 S.C. 635, 642, 576 S.E.2d 168, 171 (2003).  Similarly, the trial court should grant a directed verdict when the evidence merely raises a suspicion that the accused is guilty.  State v. Zeigler, 364 S.C. 94, 102, 610 S.E.2d 859, 863 (Ct. App. 2005). 

LAW/ANALYSIS
Appellants argue the State presented evidence that they were present when the marijuana was seized, but it failed to establish they knowingly attempted to possess the marijuana at issue.  Consequently, Appellants contend the trial court erred in failing to direct verdicts of not guilty for trafficking in marijuana.  We disagree.  
 
Section 44-53-370 of the South Carolina Code (1976 & Supp. 2006) defines trafficking in marijuana as:  
 

 (e) Any person who knowingly sells, manufactures, cultivates, delivers, purchases, or brings into this State, or who provides financial assistance or otherwise aids, abets, attempts, or conspires to sell, manufacture, cultivate, deliver, purchase, or bring into this State, or who is knowingly in actual or constructive possession 
 or who knowingly attempts to become in actual or constructive possession of:
 (1) ten pounds or more of marijuana is guilty of a felony which is known as 
 trafficking in marijuana and, upon conviction, must be punished as follows if the quantity involved is:
  . . . (b) one hundred pounds or more, but less than two thousand pounds, or one hundred to one thousand marijuana plants regardless of weight, a mandatory term of imprisonment of twenty-five years, no part of which may be suspended nor probation granted, and a fine of twenty-five thousand dollars . . . .

(emphasis added).  
In drug cases, our Supreme Court has recognized that the element of knowledge is seldom susceptible of direct proof, so it may be proven by circumstantial evidence.  See State v. Attardo, 263 S.C. 546, 550, 211 S.E.2d 868, 869 (1975) (holding that in prosecution for knowing or intentional possession of controlled substances, knowledge can be proven by evidence of acts, declarations, or conduct of the accused from which the inference may be drawn that the accused knew of the existence of the prohibited substance). Knowledge is generally a question for the jury.  Id.
The Appellants behavior and actions while at Billys Super Store were markedly suspicious, and the ensuing course of events was inconsistent with what a reasonable delivery of furniture would entail.  First, the Thunderbird drove past the semi-trailer and then out of the customs agents sight before stopping at Billys Super Store, apparently to ensure that it was safe to proceed with the delivery.  The Thunderbird returned with the moving truck only after first driving past the undercover agent.  The agent testified that the moving truck and the Thunderbird proceeded to block the semi-trailer, which precluded the semi-trailer from moving in any direction.  The Thunderbirds driver then conversed with Appellants while the Thunderbirds passenger instructed the undercover agents to follow them to a rural area where Appellants would unload the semi-trailer.  Although all parties were at Billys Super Store where it was clearly more practical to unload the furniture, Appellants still attempted to move the furniture to a more rural and less visible location.  These actions were inconsistent with transporting furniture as the moving truck was completely empty and contained sufficient room to transport the furniture from Billys Super Store to its final destination. 
 
All of these actions, while not direct proof of a knowing attempt to possess marijuana, formed substantial circumstantial evidence to send the case to the jury, as Appellants actions and behavior were inconsistent with the seemingly innocuous task of unloading furniture.  Accordingly, the trial court did not err in refusing to direct verdicts in Appellants favor.
CONCLUSION
Although we recognize the State presented minimal, if any, direct evidence at trial to show Appellants knew the semi-trailer contained marijuana, we find Appellants actions and behavior during the undercover operation constituted substantial circumstantial evidence so as to require the cases submission to the jury.  For the reasons stated herein, the trial courts decision is 
 
AFFIRMED.[1]  
HUFF, BEATTY, and WILLIAMS, JJ., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.